[Cite as *State v. Harris*, 2017-Ohio-8130.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2017-03-026 |
| | : | O P I N I O N |
| - vs - | | 10/9/2017 |
| | : | |
| SHAMAURIA HARRIS, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 16 CR 31762

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Thomas W. Kidd, Jr., P.O. Box 231, Harveysburg, Ohio 45032, for defendant-appellant

**PIPER, J.**

{¶ 1}   Defendant-appellant, Shamauria Harris, appeals a decision of the Warren County Court of Common Pleas to accept her guilty plea for aggravated possession of drugs.

{¶ 2}    Harris was a passenger in a car that was pulled over for speeding.  The officer who performed the stop noted a strong odor of marijuana, and located various controlled substances in the car.  Harris and the driver were arrested, and Harris was charged by

complaint with aggravated possession of drugs. Harris later petitioned the court for intervention in lieu of conviction ("ILC").

{¶ 3} The trial court ordered an evaluation to determine if Harris was eligible for ILC. The trial court then held a hearing during which Harris and her co-defendant were both present and changed their initial not guilty pleas to guilty. After accepting Harris' guilty plea, the trial court granted her ILC. Several months later, however, Harris violated the terms of her ILC when she tested positive for multiple drugs, as well as having a device to alter the results of her drug screen. Harris admitted to the violation, and the trial court revoked her ILC and sentenced her to community control. Harris now appeals the trial court's decision to accept her guilty plea before she was granted ILC, raising the following assignment of error.

{¶ 4} SHAMAURIA HARRIS'S PLEA OF GUILTY WAS NOT ENTERED KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY AND SHOULD BE VACATED AND THE CASE REMANDED FOR FURTHER PROCEEDINGS.

{¶ 5} Harris argues in her assignment of error that the trial court erred by accepting her guilty plea.

{¶ 6} When a defendant enters a guilty plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily, and the failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution. *State v. Butcher*, 12th Dist. Butler No. CA2012-10-206, 2013-Ohio-3081, ¶ 8. To ensure that a defendant's plea is properly accepted, the trial court must engage the defendant in a colloquy pursuant to Crim.R. 11(C). *State v. Henson*, 12th Dist. Butler No. CA2013-12-221, 2014-Ohio-3994, ¶ 10.

{¶ 7} According to Crim.R. 11(C)(2), the trial court may not accept a defendant's guilty plea without first addressing the defendant personally and:

(a) Determining that the defendant is making the plea

- 2 -

voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 8} A guilty plea is invalid if the trial court does not strictly comply with Crim.R. 11(C)(2)(c), which requires the trial court to verify that the defendant understands the constitutional rights he or she is waiving. *State v. Shavers*, 12th Dist. Butler No. CA2014-05-119, 2015-Ohio-1485, ¶ 9. However, the trial court need only substantially comply with the nonconstitutional notifications required by Crim.R. 11(C)(2)(a) and (b), which includes notification of the maximum penalty involved. *State v. Coffman*, 12th Dist. Butler No. CA2015-01-014, 2015-Ohio-2990. According to the substantial compliance standard, the appellate court must review the totality of the circumstances surrounding the defendant's plea and determine whether the defendant subjectively understood the effects of his or her plea. *State v. Givens*, 12th Dist. Butler No. CA2014-02-047, 2015-Ohio-361, ¶ 12.

{¶ 9} While the most accurate way to inform a criminal defendant of his or her constitutional rights during the plea colloquy "is to use the language contained in Crim.R. 11(C), * * * a trial court's failure to literally comply with Crim.R. 11(C) does not invalidate a plea agreement if the record demonstrates that the trial court explained the constitutional right '*in a manner reasonably intelligible to that defendant.*'" (Emphasis sic.) *State v. Barker*,

- 3 -

129 Ohio St.3d 472, 2011-Ohio-4130, ¶ 14 quoting *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶ 27. "This is because a trial court can still convey the requisite information on constitutional rights to the defendant even when the court does not provide a word-for-word recitation of the criminal rule, so long as the trial court actually explains the rights to the defendant." *Barker* at ¶ 15.

### A. Personal Recitation

{¶ 10}  Harris first argues that the trial court failed to comply with Crim.R. 11 by not advising her of her constitutional rights, and instead, relying on Harris' presence at the hearing when the court provided a recitation of rights to Harris' co-defendant.

{¶ 11}  During Harris' portion of the plea hearing, the following exchange occurred between the trial court and Harris.

> Court:  Now, you were in the courtroom when I went over [co-defendant's] rights with her, right?
>
> Harris:  Yes.
>
> Court:  Were you listening to that?
>
> Harris:  Yes, I was.
>
> Court:  And, you have all of those same rights, Ms. Harris. You're presumed to be innocent. You have the right to a trial, to confront witnesses against you, to compel witnesses to testify in your case. You have the right to remain silent and you will not be convicted until your proof is established beyond a reasonable doubt, either to me or to a jury. Do you want me to go through those rights with you in more detail?
>
> Harris:  No, Your Honor.
>
> Court:  It's the same spiel that I give every time Ms. Harris. I can give it to you again if you want or if you have questions about what your rights are, I can go over those with you.
>
> Harris:  No thank you.

{¶ 12}  Harris contends that the trial court should have advised her personally of her

rights rather than relying upon a previous recitation of rights to her co-defendant. Despite Harris' argument to the contrary, the trial court's statement to her includes an express listing of the constitutional rights that Harris was waiving, including a presumption of innocence, as well as the right to trial, confrontation, subpoena, silence, and proof beyond a reasonable doubt. While the trial court may not have offered extensive detail regarding these rights, it is not required to by Crim.R. 11. Instead, the rule only requires the trial court to determine "that the defendant understands" the rights she is waiving by pleading guilty.

{¶ 13} The record clearly indicates that the trial court determined that Harris understood the rights she was waiving as a result of her plea. The court made sure that Harris was listening when the court introduced and explained the rights to Harris' co-defendant, and that Harris had no questions about the court's explanation of those rights. The court asked Harris multiple times if she wanted a greater explanation of the rights, and each time, Harris said no. Moreover, Harris never expressed confusion or indicated that she did not understand what rights she was waiving because of her plea. As such, we find that the trial court strictly complied with Crim.R. 11(C)(2)(c)'s constitutional requirements.

{¶ 14} The Ohio Supreme Court has addressed a similar situation that proves useful in our discussion of Harris' argument. *State v. Billups*, 57 Ohio St. 2d 31 (1979), syllabus. Therein, the court determined

> A trial court does not commit prejudicial error under Crim.R. 11(C)(2) by entering a judgment of conviction upon a plea of guilty where the record of the guilty plea proceeding affirmatively demonstrates that: (1) the defendant was represented throughout the proceedings by counsel; (2) the trial court conducted a discussion with the defendant, apprising him of the nature of the charges and the minimum and maximum sentences for each offense, and determining the voluntariness of the submitted plea; (3) the trial court did not orally inform the defendant of each of his rights because the defendant acknowledged that he heard and understood the court's earlier colloquy with a previous defendant and did not desire his own recitation; (4) the defendant read and executed in open court, in

the presence of defense counsel, a written document which clearly explained defendant's rights and stated that defendant was waiving them by entering his plea of guilty; and (5) the defendant was literate and had obtained a ninth grade education.

{¶ 15} These factors are clearly present in this case as well. First, Harris was represented by counsel at the time the trial court accepted her plea and discussed the process of ILC. Second, the trial court addressed Harris personally in open court and apprised her of the nature of the charges against her, as well as the possible sentence. The court also addressed the voluntariness of the plea by ensuring that Harris' plea was not coerced by threats or promises, and that Harris was not under any influence that would prevent her from understanding her actions and the consequences of her plea. Third, Harris told the court that she heard the court's recitation of rights given to her co-defendant, and told the court twice that she did not want her own recitation. Fourth, Harris executed a Change of Plea and Entry Granting ILC, which she reviewed with her counsel and which detailed the constitutional rights she was waiving by pleading guilty. Fifth, Harris was literate and obtained a bachelor's degree in criminal justice.

{¶ 16} The record clearly supports the inclusion of each of the *Billup* factors, and there is nothing to indicate that Harris not receiving a personal explanation of the rights she was waiving caused her plea to be involuntarily given.

### B. Violation of ILC Terms

{¶ 17} Harris also argues the trial court did not substantially comply with Crim.R. 11(C)(2) when the court addressed the consequences of violating the terms of her ILC.

{¶ 18} According to R.C. 2951.041(F), if a trial court finds that an offender has violated terms or conditions of his or her ILC, the court "shall enter a finding of guilty and shall impose an appropriate sanction under Chapter 2929. of the revised Code." This court has further held that based on the plain language of R.C. 2951.041(F), a trial court may not

extend an ILC treatment plan once the offender has admitted to violating the terms or conditions of his or her ILC plan. *State v. Davis*, 12th Dist. Warren Nos. CA2013-12-129 and CA2013-12-130, 2014-Ohio-2122, ¶ 15.

{¶ 19} During the plea hearing, the trial court stated, "if you don't follow the treatment plan or you use drugs or alcohol during the treatment period, then I can revoke the intervention in lieu of conviction and proceed to sentence. Do you understand that?" Harris answered "yes." Harris now argues that the trial court's use of the word "can" indicates that the court could revoke ILC but that such was not mandatory.

{¶ 20} Even so, the trial court went on to inform Harris that the state "takes the position right now Ms. Harris, that any violation of the treatment plan by you, or any use of drugs or alcohol by you during the treatment period, means that I must revoke the intervention in lieu of conviction and proceed to sentence. Do you understand that?" Harris answered that she understood.

{¶ 21} While we agree that the trial court did not give a clear statement of the law that revocation of ILC is mandatory upon a finding of violation, we do not find that the statements caused the trial court's colloquy to lack substantial compliance with Crim.R. 11(C)(2)(a) and (b). Instead, and after a full review of the totality of the circumstances surrounding Harris' plea, we find that Harris subjectively understood the effects of her plea.

{¶ 22} Even with the trial court's imprecise statements regarding the consequences of violating the terms of ILC, Harris subjectively understood the effects of her plea. Harris was well-aware that violating the terms of her ILC would result in the consequences of ILC being revoked. This point was reiterated when the trial court noted that Harris was subject to a finding of guilt and imposition of sentence upon violation of her ILC terms. In fact, the trial court later discussed the imposition of possible sentences with Harris, including placing her on community control or sending her to prison. Harris, therefore, subjectively understood that

upon a revolution of ILC the effect of her plea would be a guilty finding followed by a pronounced sentence.

{¶ 23} By agreeing to ILC and then successfully completing the program, Harris would have avoided a criminal conviction for her aggravated drug possession. By no other means could Harris hope to achieve a similar result, even if Harris was more specifically told that her ILC would be revoked upon violation. Harris was facing a felony conviction for drug possession, yet she staunchly declined any option that included going to trial or entering an Alford plea and being placed directly on probation.

{¶ 24} Harris has not demonstrated any prejudice because of the way in which the trial court addressed the consequences of violating ILC. Harris does not establish prejudice where the record is clear that she accepted the plea because she would not be subject to a conviction should she complete ILC successfully. The fact that she later violated the terms of her ILC program, however, did not make her plea involuntary when made.

### C. Recitation of the Facts

{¶ 25} Harris also argues that her plea was not voluntarily made because she challenged the state's recitation of facts during the trial court's colloquy. During the hearing, the state recited a limited set of facts regarding the traffic stop that resulted in the charge against Harris. The trial court then asked Harris, "do you admit that those facts are true?" Harris responded, "no, but - -."

{¶ 26} At that point, the trial court informed Harris that she did not have to admit the facts, and that she could choose to enter an Alford plea or move forward with a trial. The court explained both options in detail, including what sentence was likely with each option, and gave Harris time to discuss the issue with her attorney. After going off the record and allowing Harris to confer with her attorney, Harris informed the court that she wanted to move forward with the guilty plea and seek ILC. Thereafter, the trial court once more asked Harris

if she heard the facts and whether or not she admitted them, at which point, Harris responded, "I do," and then pled guilty.

{¶ 27} While Harris initially indicated that she did not agree with the state's recitation, she nonetheless agreed to plead guilty knowing that she had a chance to complete ILC. The court gave Harris ample opportunity to re-think her decision to plead, and after discussing the issue with her attorney, Harris stated her desire to move forward with the guilty plea. Harris made this decision after hearing, in detail, from the trial court that she had other options, including a trial or an Alford plea. However, Harris made the decision to plead guilty, and fully accepted the state's recitation of the facts without further comment or question.

{¶ 28} After reviewing the record, we find that Harris entered her plea knowingly, intelligently, and voluntarily, and that the trial court complied with Crim.R. 11(C) before accepting her plea. As such, Harris' assignment of error is overruled.

Judgment affirmed.

RINGLAND, P.J., and M. POWELL, J., concur.